IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AJB ENTERPRISES, LLC, | Civil Action No. |
| Plaintiff, | |
| v. | COMPLAINT FOR UNFAIR COMPETITION AND DEMAND FOR JURY TRIAL |
| BACKJOY ORTHOTICS, LLC, | |
| Defendant. | |

AJB Enterprises LLC, by and through its attorneys, state the following as their complaint against Defendant BackJoy Orthotics, LLC ("BackJoy").

**The Parties**

1. Plaintiff AJB Enterprises LLC is a limited liability corporation created under the laws of Connecticut having its principal place of business at Fairfield, Connecticut and does business as Body Back Company (hereinafter, "Body Back").

2. Plaintiff Body Back is in the business of manufacturing and selling massage, fitness and related products, including cane-shaped back massagers bearing its distinctive trade dress. Such business was initiated by Plaintiff's predecessor Paul Nash operating as Body Back Company, Inc. Body Back markets its products in the United States through Amazon and other channels of trade.

3. Upon information and belief, Defendant Backjoy Orthotics LLC is a corporation organized and existing under the laws of the State of Delaware having a place of business at 6685 Gunpark Drive #200, Boulder, Colorado 80301 and markets

chiropractic and related products in the United States through Amazon and other channels of trade.

4. Defendant has manufactured and/or exported from and/or imported into the United States and/or distributed and/or sold cane-shaped back massagers bearing the distinctive trade dress of Body Back and committed other acts and omissions in violation of the intellectual property, competition and other rights of Plaintiff.

**Jurisdiction**

5. Jurisdiction is founded on the existence of a federal question arising under the Lanham Act, more particularly for federal trade dress infringement and unfair competition under Section 43(a) of the Trademark Act of 1946, 15 U.S.C. §§ 1121 and 1125(a), pursuant to 28 U.S.C. § 1331(a), and §§ 1332 and 1338 (a), as hereinafter more fully appears herein.

6. Jurisdiction is also based on diversity of citizenship, 28 U.S.C. §§ 1332 and 1338(a), as the defendant is a Delaware corporation doing business in Connecticut, and Plaintiff Body Back is a Connecticut corporation. The amount in controversy exceeds $75,000 exclusive of interests and costs.

7. The Court has jurisdiction over related claims arising under the laws of the State of Connecticut and the several states of the United States under the

provisions of 28 U.S.C. §1338(b) in that said claims are joined with a substantial and related claim under the trademark laws of the United States, 15 U.S.C. § 1051 et seq.

8. Venue is proper in the District of Connecticut under 28 U.S.C. §§ 1391.

**FACTS COMMON TO ALL COUNTS**

9. Back scratchers, cane-shaped massagers and the like in various configurations have long been sold on the market. Such products are effective to apply finger point massage pressure using a variety of massage surface formations, including spherical, hemispherical, acorn-shaped and pyramidal configurations. Plaintiff Body Back's predecessor in interest, Body Back Company originated a cane-shaped massager with a particular S-shaped configuration incorporating a matrix of associated massage surface configurations and has been selling the same since 1995 under the designation "Trigger Point Massager" (the "Designation"). Body Back's predecessor originated the design of its massager, for which it was awarded a patent, which has since expired. Body Back Company has been selling the Trigger Point Massager massage cane with its distinctive trade dress in interstate commerce since 1996 and has made large sales of the same, and by virtue of said sales the designation "Trigger Point Massager" has come to be associated with Body Back as the source of the Trigger Point Massager massage cane. The Trigger Point Massager massage cane is illustrated in Exhibit A.

10. Body Back and its predecessor, long prior to the acts complained of herein, has been and is now engaged in interstate commerce and/or the foreign commerce of the United States by virtue of the ongoing sales of its distinctive massage cane (hereinafter the "Body Back Original") having its distinctive trade dress illustrated in Exhibit A, which trade dress is the subject of this litigation.

11. The Body Back Original has been sold in great numbers for many years and continues to be extensively sold.

12. The appearance of the Body Back Original, more particularly, the product appearance including the sculptural configuration, orientation and arrangement of certain of its various components (hereinafter, the "Trade Dress"), as more fully described below, has come to be associated with Body Back as the source of the Body Back Original and is a protectable trade dress under §43(a) of the Lanham Act, and is illustrated in the massage cane of Exhibit A.

13. Plaintiff is, by assignment, the owner of all rights in the Designation and the Trade Dress. Plaintiff derives substantial benefits from selling products bearing the Designation and the Trade Dress.

14. The Trade Dress has been infringed by Defendant. See, Exhibit B, images of a cane massager made and sold by Defendant (hereinafter "Infringing Product").

15. Defendant has copied substantially all the features of Plaintiff Body Back's cane massagers, including copying the following elements: (i) an overall elongated S-shaped cane configuration, (ii) a grooved cross-section cane configuration, (iii) a spherical massage nub at the end of a slanted elongated member on one side of the cane slanted toward the top of the S-shape, (iv) a spherical massage nub at the end of a slanted elongated member on the other side of the cane slanted toward the bottom of the S-shape, (v) a sphere-shaped massage nub at the bottom end of the massager, (vi) an egg-shaped massage nub at the other top end of the massager, (vii) two nubs centrally located on the same side of the frame as the large loop of the S-shape, (viii) a single nub on the inside of the small S-loop, (ix) a second single nub on the inside of the large S-loop near the end of that S-loop, (xi) a pair nubs on the inside of the large S-loop positioned between the single nub and the end of the large S-loop, and (xii) multiple frame portions without grooves. See the side by side illustration of the Body Back Original and the Infringing Product in Exhibit C.

16. Plaintiff has used and continues to use its distinctive Trade Dress and, by virtue of widespread sales, the Trade Dress has come to indicate origin with Plaintiff Body Back. Plaintiff, by virtue of said use on the goods, and through Plaintiff's business and quality standards, has obtained a reputation for producing cane massagers of the highest quality. Such reputation has given Plaintiff and the

Body Back Original and other products of Plaintiff a pre-eminent position in the marketplace.

17. The configuration of the Body Back Original is a protectable trade dress under §43(a) of the Lanham Act, which has been infringed by Defendant and continues to be infringed on account of Defendant's sale in commerce of Defendant's Infringing Product.

18. Plaintiff and its predecessor have incurred great expense and have devoted substantial resources to make the Body Back Original famous and readily recognizable to consumers. Plaintiff's investments and efforts have been successful as the Trade Dress has become highly distinctive in the marketplace and denotes to purchasers cane massagers which originate with Plaintiff Body Back.

19. Over the years since it first began making its cane massagers, Plaintiff has developed proprietary know-how and information involving the sourcing, manufacture, advertisement and sale of cane massagers. Such proprietary know-how and information is not generally known or readily accessible to others, and has been the subject of efforts aimed at preserving its confidentiality.

20. Plaintiff also has developed tooling and specifications for its cane massagers that make it uniquely capable of quickly responding to market needs with a reliable quality product and the same is not generally known or readily accessible to others, and has been the subject of efforts aimed at preserving its

confidentiality. Such proprietary know-how and information and said tooling and specifications have been assigned to Plaintiff.

21. On account of the success in the marketplace of Plaintiff's highly distinctive cane massagers bearing the Trade Dress, and further on account of Plaintiff's Predecessor's ability, and further because of its proprietary know-how and information, and further because of Plaintiff's Predecessor's available tooling, Defendant approached and worked with Plaintiff Body Back's Predecessor to manufacture cane massagers to take advantage of an opportunity for sales to retailers including Bed Bath & Beyond.

22. In return for assistance from Body Back, Defendant promised Plaintiff's Predecessor compensation in the form of a fee of five percent of sales for helping to establish the product line and take advantage of the sales opportunity with Bed Bath & Beyond.

23. In or about November of 2013, Defendant sent a non-disclosure agreement to Plaintiff's Predecessor under which Defendant BackJoy agreed to not use Plaintiff's predecessor's confidential information except to evaluate a potential arrangement between Plaintiff's Predecessor and BackJoy, and to implement that arrangement. Exhibit D.

24. More particularly, in January of 2014, Defendant proposed a licensing arrangement, but Plaintiff's Predecessor discounted the value of the patent and stressed the value of branding.

25. In the following weeks, relying on the protections of the non-disclosure agreement, Body Back's Predecessor began to provide confidential information to Defendant in response to requests for information from Defendant, including information needed to make Defendant's product, while implementing Defendant's objective of pushing tooling costs down. Exhibit E.

26. Continuing to offer promises of a five percent of sales compensation figure, Defendant requested samples of the Body Back Original from Body Back's Predecessor and sought further assistance from Body Back's Predecessor.

27. In response to Defendant's promise to send a compensation agreement to Body Back, Body Back's Predecessor worked with Defendant to set up production at Polycast, an injection molding facility used by Body Back's Predecessor, in order to enable an expedited test marketing of the cane massager at Bed Bath & Beyond. Such assistance provided by Body Back's Predecessor included furnishing CAD drawings, materials information, and other information, enabling test marketing at Bed Bath & Beyond. Exhibit F.

28. In or about early August, after implementation of the new product was well underway, Defendant stated that it was unwilling to enter into a licensing

arrangement with Body Back's Predecessor, preferring to employ Body Back's Predecessor as a consultant, and forwarded to Body Back a five percent consulting agreement. Exhibit G.

29. Defendant reported to Body Back's Predecessor on September 16, 2014 that their joint efforts were seeing traction at Bed Bath & Beyond, estimating substantial sales in 30 stores in 30 days. Exhibit H.

30. Notwithstanding the expiration of the Body Back patent, branding in the form of the Trade Dress was in force and such branding was the property of Plaintiff's Predecessor, and Defendant, in an email dated September 16, 2014, stated it wanted to "work with [Body Back's Predecessor] to "ensure there is brand and uniqueness". Exhibit H

31. To continue to take advantage of Body Back's Predecessor's cooperation, Defendant stated in an email dated October 7, 2014 that Defendant was agreeable to signing the five percent agreement and would have its in house legal person, Sarah, work on the agreement Plaintiff's Predecessor "this week." Exhibit H.

32. On September 16, 2014, Defendant pushed Body Back's Predecessor to secure a 1200 unit order from Polycast and stated it "understand[s]" Body Back's Predecessor's "desire to have the agreement in place." Defendant further offered to ''backdate the sales" so the agreement will cover the $20K in goods already sold to BB&B. Exhibit H.

33. Defendant further agreed to avoid selling Amazon. Exhibit H.

34. Despite repeated attempts, Defendant was unwilling to formalize the promised agreement with Body Back's Predecessor, despite promises weeks earlier to formalize the agreement. See Exhibit H.

35. Subsequently, Defendant promised to Body Back to send the agreement but the same was never forthcoming.

36. About a week later, Defendant offered only excuses why an agreement was not provided.

37. Nearly two months later, Defendant acknowledged Body Back's Predecessor's patience, but then stated that it only wished to pay Body Back's Predecessor for the hours spent transferring knowhow and other confidential information to Defendant. Exhibit J.

38. Body Back's Predecessor continued its efforts aimed at obtaining in a formal writing an acceptable set of terms for the work it had performed and the value it had provided to Defendant.

39. Upon information and belief, Defendant has made substantial sales to Bed Bath & Beyond and others at the wholesale and retail levels of trade. Such sales of Defendant have been of product which misappropriates the trade dress of Plaintiff, and goes beyond this to include cane massagers in a color which replicates the color of Plaintiff's most popular cane massager. Such sales have been enabled

on account of the efforts and the provision of confidential information on the part of Body Back's Predecessor, and further on account of the goodwill of the Body Back business built up over the years in the Body Back Original and the Trade Dress.

40. Plaintiff and its predecessor have been damaged by Defendant's infringement of the Trade Dress. Body Back's Predecessor has assigned its claims against Defendant BackJoy to Bodyback. Such damage includes, without limitation, lost profits, and/or royalty income, and/or damages on account of convoyed sales, and the Defendant has been unjustly enriched by such infringement, on account of profits and/or convoyed sales. Plaintiff and its predecessor have also suffered irreparable harm from Defendant's infringement of the Trade Dress and the unfair competitive activities of Defendant complained of herein and will continue to suffer irreparable harm in the future unless Defendant is preliminarily and permanently enjoined from infringing the Trade Dress and said other unfair acts.

41. Defendant has had actual and/or constructive knowledge of the Trade Dress, and its infringement of the Trade Dress has been, and continues to be, willful, wanton, malicious and deliberate.

42. Body Back and its predecessor, long prior to the acts complained of herein, have been and are now engaged in interstate commerce and/or the foreign commerce of the United States by virtue of the ongoing sales of Plaintiff's distinctive massage cane which it sells under the Designation Trigger Point Massager.

43. Upon information and belief, Defendant has made substantial sales to Bed Bath & Beyond and/or others of cane massagers using the designation TRIGGER POINT MASSAGER. Such sales have been enabled *inter alia* on account of the goodwill of the Body Back business symbolized by the Designation, which Designation has come to be associated in the public mind with Body Back and the Body Back Original.

44. Plaintiff and its predecessor have been damaged by Defendant's use of the Designation with the Trade Dress. Such damage includes, without limitation, lost profits, and/or royalty income, and/or damages on account of convoyed sales, and the Defendant has been unjustly enriched by such infringement, on account of profits and/or convoyed sales. Plaintiff and its predecessor have also suffered irreparable harm by Defendant's infringement of the Designation and will continue to suffer irreparable harm in the future unless Defendant is preliminarily and permanently enjoined from infringing the Designation.

45. Defendant has had actual and/or constructive knowledge of the Designation and Trade Dress, and its infringement of the Designation has been, and continues to be, willful, wanton, malicious and deliberate.

**COUNT ONE**

**Federal Unfair Competition and Trade Dress Infringement**

46. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 45 of this complaint as a part of this Count.

47. Plaintiff Body Back's cane massagers have an appearance including distinctive features which have come to be associated with cane back massagers originating with Plaintiff: (i) an overall elongated S-shaped cane configuration, (ii) a grooved cross-section cane configuration, (iii) a massage nub at the end of a slanted elongated member on one side of the cane slanted toward the top of the S-shape, (iv) a massage nub at the end of a slanted elongated member on the other side of the cane slanted toward the bottom of the S-shape, (v) a massage nub at the bottom end of the massager, and (vi) a massage nub at the other top end of the massager.

48. Upon information and belief, long after Plaintiff Body Back's creation of the Body Back Original, Defendant, with actual and/or constructive knowledge of Plaintiff Body Back's Trade Dress, and in contravention of Plaintiff Body Back's trade dress rights, adopted and used a product configuration for its cane massagers calculated to capitalize on the goodwill and reputation of Plaintiff Body Back's Trade Dress. Defendant had as its objective to mimic the distinctive elements of the Trade Dress as a means for unfairly taking advantage of and profiting from the Body Back image and Plaintiff's reputation in the marketplace and unfairly selling Defendant's infringing cane massagers. Defendant has distributed and continues to

distribute in interstate commerce to the public, infringing cane massagers bearing an infringing derivative version of the distinctive features of the Body Back Original's Trade Dress for Defendant's own commercial advantage.

49. Defendant has used and continues to use derivatives, and/or colorable imitations of Plaintiff Body Back's Trade Dress in direct competition with Plaintiff. Defendant has used and continues to use these infringing derivatives and/or colorable imitations of Plaintiff Body Back's Trade Dress in connection with sales, offering for sale or distribution, advertising and promotion of goods in a manner that is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods.

50. Defendant has deliberately misled and will continue to mislead purchasers, and prospective purchasers, as well as the public at large, to believe, contrary to fact, that Defendant's goods are manufactured, marketed, sponsored or endorsed by, or affiliated with Plaintiff. Defendant is unfairly competing with Plaintiff by trading on and disparaging Plaintiff's goodwill symbolized by its Trade Dress.

51. Defendant's acts of using the Trade Dress are a false description and representation that said goods are made by, sponsored by and/or affiliated with Plaintiff Body Back. Said acts of using Body Back's Trade Dress are in violation of 15 U.S.C. § 1125(a) in that Defendant has used, in connection with goods, a false

designation of origin and a false description and representation, including words, reproductions and other symbols tending to falsely describe or represent the same and have caused such goods to enter into interstate commerce, and/or are in violation of §43 of the Lanham Act as constituting dilution of the Trade Dress.

52. As a direct and proximate result of these acts of unfair competition, trade dress infringement and false designations of origin, together with the other acts complained of herein, Plaintiff has sustained and will continue to sustain monetary damages and irreparable injury to their business, goodwill, reputation and profits, in an amount not presently known but believed to be in excess of $2,000,000. Plaintiff is entitled to judgment for Defendant's profits and any damages sustained by Plaintiff in consequence of the deliberate nature of the infringement by Defendant in an amount equaling three times said damages.

53. By reason of the acts of Defendant herein alleged, Plaintiff has been damaged, and, unless restrained and enjoined preliminarily and permanently, Defendant has and will continue to deceive the public, and otherwise will cause Plaintiff immediate and irreparable harm.

**COUNT TWO**

**UNFAIR COMPETITION WITH MULTIPLE MISREPRESENTATIONS**

54. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 53 of this complaint as a part of this Count.

55. Defendant's use of the designation TRIGGER POINT MASSAGER in combination with the Trade Dress associated with direct sales of product from Defendant, to resellers and to end-users, constitutes unfair competition under the laws of the several states. Respecting sales made by resellers who purchase products from Defendant, Defendant is liable as a joint tortfeasor for such resellers' sales. Such direct sales and such resellers' sales have damaged Body Back and will continue to damage Body Back unless enjoined by this Court.

**COUNT THREE**

**COMMON LAW UNFAIR COMPETITION BY CONFUSION**

56. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 55 of this complaint as a part of this Count.

57. Defendant sells cane massagers with substantially all the elements of Plaintiff Body Back's cane massagers. In addition, Defendant's cane massager is marked with U.S. patent number D402,764, which is the number of the patent owned by Plaintiff Body Back. Such actions in combination with use of the Trade

Dress and the Designation are an attempt to deceive consumers into believing that they are purchasing products originating with Body Back.

58. Defendant's acts, complained of above, constitute violation of Plaintiff's rights under the common law and statutory law of the several states and have damaged Plaintiff.

**COUNT FOUR**

**UNFAIR COMPETITION-INDUCING DISCLOSURE OF TRADE SECRETS**

59. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 58 of this complaint as a part of this Count.

60. By falsely holding out promises of future compensation to Body Back, Defendant induced Body Back to disclose its proprietary information and to render services to Defendant.

61. Such acts constitute unfair competition under the laws of the several states, have unjustly enriched Defendant and have damaged Body Back.

**COUNT FIVE**

**CONTRACT**

62. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 61 of this complaint as a part of this Count.

63. The correspondence between Defendant and Body Back, noted above, constitute a binding contract under which Body Back is entitled to 5% of all sales of cane massagers made by Defendant.

**COUNT SIX**

**UNJUST ENRICHMENT AND QUASI-CONTRACT**

64. As a cause of action and ground for relief, Plaintiff alleges and incorporates by reference paragraphs 1 through 63 of this complaint as a part of this Count.

65. As a result of the complained of activities of Defendant, Defendant has been given a benefit from Body Back. Defendant has reaped that benefit, reaping where it has not sown, and has accepted and retained such benefit without compensating Body Back. It would be inequitable for the Defendant to retain such benefit without paying the value of the same.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

a. A judgment that the Trade Dress and the Designation are good and valid at law, and that Defendant has infringed the Designation and the Trade Dress;

b. A preliminary injunction enjoining and restraining Defendant, its officers, directors, agents, servants, employees, attorneys and all others acting under

or through them, directly or indirectly, from infringing the Designation and the Trade Dress of Plaintiff;

c. A permanent injunction enjoining and restraining Defendant, its officers, directors, agents, servants, employees, attorneys, and all others acting under or through it, directly or indirectly, from using the Designation and Trade Dress and from otherwise infringing rights of Plaintiff;

d. A judgment and order requiring Defendant to pay damages, with prejudgment interest;

e. For a preliminary and final injunction restraining Defendant, its agents, servants, employees, successors, assigns and those in privity and/or concert with it from using Plaintiff Body Back's product designs, trademarks, or any other designations closely similar thereto, and from infringing the Design Patent and the Trade Dress of Plaintiff Body Back;

f. For an order requiring Defendant to account to Plaintiff under contract and/or in equity account of unjust enrichment and to pay damages for the same;

g. For an order requiring Defendant to recall from its distributors, wholesalers, retailers and customers any product bearing any reproduction, counterfeit, copy or colorable imitation of the Trade Dress, or infringing the Designation.

h. For an order requiring Defendant to account to Plaintiff for any and all profits derived by Defendant from the sale of its goods and for all damages sustained by Plaintiff by reason of said acts of trade dress and trademark infringement, and unfair competition complained herein.

i. For a judgment according to the circumstances of the case, for such sum above the amount found in actual damages, but not to exceed three times such amount as the Court may deem just.

j. For an order requiring that all products, documents, materials, labels, signs, products, packages, wrappings, receptacles and advertisements in Defendant's possession or control bearing the design or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same shall be delivered up and destroyed.

k. A judgment and order directing Defendant to pay the costs of this action (including all disbursements) and attorneys' fees; and

l. Such other and further relief as this Court may deem just and equitable.

Dated: May18, 2016

By: ______________________________

Anthony H. Handal (CT03837)
Handal & Morofsky
Attorneys for Plaintiff
80 East Avenue
Norwalk, CT 06851
917 880 0811
handal@HandalGlobal.com

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: May18, 2016

By: ______________________________

Anthony H. Handal (CT03837)
Handal & Morofsky
Attorneys for Plaintiff
80 East Ave.
Norwalk, CT 06851