## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AJB ENTERPRISES, LLC, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:16-cv-00758 (VAB) |
| | : | |
| BACKJOY ORTHOTICS, LLC, | : | |
|     Defendant. | : | |

## RULING ON MOTION TO DISMISS

Plaintiff, AJB Enterprises, LLC d/b/a Body Back Company ("AJB"), brought this action against Defendant, BackJoy Orthotics, LLC ("BackJoy"), alleging federal and state claims of unfair competition, trade dress infringement, breach of contract and unjust enrichment.  Compl., ECF No. 1.  BackJoy has moved to dismiss all counts for failure to state a claim under Rule 12(b)(6).  Def. Mot. to Dismiss, ECF No. 22.  For the reasons outlined below, BackJoy's Motion to Dismiss is **GRANTED**, and AJB's claims are dismissed without prejudice.

## I.    FACTUAL BACKGROUND[1]

AJB is in the business of manufacturing and selling massage and fitness products, including back massagers.  Compl. at ¶ 2.  AJB is the successor in interest to a company named Body Back Company, Inc. ("Body Back"), created and owned by Paul Nash.[2]  *Id.*  Paul Nash designed an S-shaped cane massager, and since around 1996, that massager was sold to the public by Body Back and now AJB under the name "Trigger Point Massager."  *Id.*  Body Back was awarded a patent for that design; however, the patent has since expired.  *Id.* at ¶ 9.

---

[1] Unless otherwise indicated, the following facts are taken as true for purposes of the instant motion to dismiss.

[2] The events giving rise to this Complaint involved AJB's predecessor, Body Back.  As the successor in interest to Body Back, AJB carries on the business of Body Back and continues to use the name "Body Back" in connection with its massage products.  Throughout this opinion, "AJB" will be used to refer to the Plaintiff in this action, and "Body Back" will refer to AJB's predecessor as well as the massage product at issue in this case.

BackJoy markets chiropractic and related products, *id*. at ¶ 3, and  entered into discussions with Paul Nash regarding the possibility of selling a version of the Trigger Point Massager to retailers, such as Bed Bath & Beyond.  *Id.* at ¶ 21.  In November 2013, the parties entered into a non-disclosure agreement in which Body Back agreed to disclose relevant confidential information related to its product, and BackJoy agreed to maintain the confidentiality of that information and cease all use of the information upon Body Back's written request.  *Id*. at ¶ 23; Confidentiality Agreement, Compl. Ex. D, ECF No. 1-5.

In 2014, the parties considered entering into a licensing agreement permitting BackJoy to sell the S-shaped cane massager product in exchange for royalty payments to Body Back.  Draft Agreement, Compl. Ex. G, ECF No. 1-8.  The draft agreement provided that BackJoy would pay Body Back "royalties in the amount of five [sic] percent (5%) of Net Sales" as the "sole compensation" for its services.  *Id.* at § 3.  Body Back did not object to this 5% compensation arrangement, but it did object to several other terms in the proposed agreement and suggested several revisions. Sep.-Oct. 2014 E-mails, Compl. Ex. H, ECF No. 1-9.  The original draft consulting agreement was never signed, and BackJoy told Body Back that it would work on a revised agreement incorporating Body Back's concerns.  *Id*.; Draft Agreement at 5; Compl. at ¶ 34.

In the meantime, Body Back provided BackJoy with the information needed to make the proposed cane massager.  *Id.* at ¶¶ 26-27.  Body Back also set up production at an injection molding facility to enable test marketing of the product, and the parties conducted successful sales of the product at Bed Bath & Beyond.  *Id.* at ¶¶ 27-28.  Discussions regarding the consulting agreement continued by e-mail, and BackJoy represented to Body Back that it would be sending along an updated consulting agreement for review and signature, indicating that it did

not "see any issues really" with Body Back's revisions and that it would "back date the sales of course for the fee" to compensate Body Back for the work performed so far.  Sep.-Oct. 2014 E-mails at 2-3.  However, BackJoy never provided a revised draft agreement.  Instead, in December 2016, BackJoy informed Body Back that the fee structure of the agreement no longer worked, and that an alternate "consulting" arrangement for past and ongoing work would be preferable.   Compl. at ¶¶ 28, 37; Dec. 2016 E-mails, Compl. Ex. J, ECF No. 1-11.  BackJoy continued selling the cane massager product through Bed Bath & Beyond, and the parties were never able to agree on a written contract providing compensation to Body Back in connection with the product.  Compl. at ¶¶ 35, 39.

## II.    STANDARD OF REVIEW

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).  The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that it should be entitled to offer evidence to support its claim. *See id.* (citation omitted).  Although courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," they may also consider documents that are "incorporated in the complaint by reference."  *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008).

In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" which is guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the Court accept as true the allegations in a complaint "is

inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Iqbal,* 556 U.S. at 679. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

AJB's Complaint includes six counts against BackJoy: (1) federal unfair competition and trade dress infringement; (2) unfair competition based on "multiple misrepresentations"; (3) unfair competition based on "confusion"; (4) unfair competition based on "disclosure of trade secrets"; (5) breach of contract; and (6) unjust enrichment. Compl. at ¶¶ 46-65. Each type of claim is addressed in turn.

### A.  Trade Dress Infringement

AJB argues that BackJoy infringed its trademark rights by diluting the trade dress of its Trigger Point Massager in violation of § 43 of the Lanham Act (15 U.S.C. § 1125). Compl. ¶¶ 46-55. Section 43 of the Lanham Act prohibits the use of "any word, term, name, symbol, or device, or any combination thereof" that is "likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(A). A product's trade dress is protected even where there

4

is no registered trademark, and a trade dress "encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001).

There are three core elements to a trade dress infringement claim: a plaintiff must allege that "(1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion" between the products. *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F.Appx. 389, 391 (2d Cir. 2003).  A viable trade dress infringement claim also requires the plaintiff to "offer a 'precise expression of the character and scope of the claimed trade dress.'" *Id.* (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 381 (2d Cir. 1997)) When the claimed trade dress goes beyond a product's packaging to encompass its design, "courts have been reluctant to extend trade dress protection[.]" *Carson Optical, Inc. v. Prym Consumer USA, Inc.,* 11 F.Supp.3d 317, 340 (E.D.N.Y. 2014) (citing *ID7D Co. v. Sears Holding Corp.*, No. 3:11-CV-1054 (VLB), 2012 WL 1247329, at *6 (D.Conn. Apr. 13, 2012)); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) ("We exercise particular caution, when extending protection to product designs" (citing *Landscape Forms*, 113 F.3d at 380 (2d Cir. 1997)).

At the outset, the Court recognizes the limited Second Circuit case law on trade dress claims at the motion to dismiss stage.  The vast majority of the Second Circuit cases referenced by the parties involved trade dress infringement claims that were permitted to proceed to later stages of litigation.  *See, e.g., Yurman,* 262 F.3d 373 (dismissing trade dress claim on Rule 50 motion); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) (dismissing trade dress claim on motion for preliminary injunction); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006) (dismissing trade dress claim on motion for

preliminary injunction).  Nonetheless, each of these cases provides the Court with guidance

regarding what is required to state a claim for trade dress infringement.  For the reasons specified

below, the Court finds that dismissal of AJB's trade dress infringement claim is appropriate.

### 1. Character and Scope of Claimed Trade Dress

The claimed trade dress here goes beyond product packaging to encompass the product

design.  AJB has specified six distinct features that make up the trade dress of the Trigger Point

Massager, focusing on "an overall elongated S-shaped cane configuration" and numerous

strategically placed "massage nubs" at specific locations across the product.  Compl. ¶ 15.  The

Complaint repeatedly references these features as "distinctive," *see id*. at ¶¶ 47-48, but does not

provide additional details regarding how those features are distinctive.

A trade dress infringement claim lacks the requisite specificity when it contains a

"laundry list of the elements that constitute [the type of product]'s design rather than a

description of which of plaintiff's trade dress design elements are distinctive and how they are

distinctive."  *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562

(S.D.N.Y. 2009); *see also Carson Optical, Inc.,* 11 F.Supp.3d at 347 (dismissing a trade dress

claim where the complaint specifically listed various elements of the claimed trade dress, but did

not explain how the elements were distinctive in relation to that particular type of product).

In its opposition to BackJoy's motion to dismiss, AJB explains that cane massagers come

in different kinds of shapes, including a "J-shaped configuration."  Mem. in Opp. at 3-4, ECF

No. 25.  AJB insists that, given the variety of shapes among cane massagers, Body Back's S-

shaped configuration is distinctive.  However, instead of pleading this information in its

Complaint, AJB mentioned it for the first time in its memorandum in opposition to BackJoy's

motion to dismiss.  *Id.; see Kermanshah*, 580 F. Supp. 2d at 258. ("A Rule 12(b)(6) motion to

dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, the Court must limit its analysis to the four corners of the complaint" (internal quotations and marks omitted)).  The description provided in the Complaint, though specific in its description of the features that constitute the claimed trade dress, fails to describe the trade dress with the level of detail required to survive a motion to dismiss.

2.   Functionality

Trade dress protection does not extend to aspects of a product that are functional in nature.  *Yurman Design, Inc.,* 262 F.3d at 116 ("A final doctrinal hurdle is the congressionally-imposed requirement that a plaintiff prove that an unregistered trade dress is 'not functional'").  This functionality requirement "protects competition even at the cost of potential customer confusion."  *Id*.  A product's trade dress is considered "functional if the right to use it exclusively 'would put competitors at a significant non-reputation related disadvantage'… The test of non functionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition."  *Id.* (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 32 (2001)).

"[T]here is a 'statutory presumption that features are deemed functional until proven otherwise by the party seeking trade dress protection,'" *Carson Optical, Inc.,* 11 F.Supp.3d at 340 (quoting *TrafFix Devices,* 532 U.S. at 29).  A claimed "trade dress is functional, and thus not protectable, when it is 'essential to the use or purpose of the article.'  A product design is functional when 'certain features of the design are essential to effective competition in a particular market.'"  *Cartier, Inc. v. Sardell Jewelry, Inc*., 294 F. App'x 615, 620 (2d Cir. 2008) (citing *Yurman Design, Inc.,* 262 F.3d at 116; *Landscape Forms,* 70 F.3d at 253).  "[T]he fact

that a design feature performs a function does not make it essential to the performance of that function; it is instead the absence of alternative constructions performing the same function that renders the feature functional." *Brandis Int'l, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987); *see also Cartier*, 294 F. App'x at 621 ("That the design features perform a function…is not dispositive because the ultimate test is whether the feature is dictated by the functions to be performed").

The features of Body Back's cane massager that constitute the claimed trade dress appear to be directly related to the functionality of the device.  In the e-mail correspondence between Paul Nash and BackJoy regarding the design of the allegedly infringing product, incorporated by reference in the Complaint, Paul Nash describes the placement of the massage nubs as contributing to the functioning of the product, explaining that "[t]he main function of the tool is by using the knobs that are at the ends of the S curve" and further explaining that the "other knobs are secondary but useful."  Feb.-Mar. 2016 E-mails, Def. Ex. E, ECF No. 1-6.  AJB argues that these features, particularly the S-shaped configuration of the product, though they may be useful, are not essential to the purpose of the product because a variety of alternative configurations are also effective; thus, the features are not functional.  Mem. in Opp. at 11.

Factual allegations regarding the functionality of the claimed trade dress are referenced only briefly in the Complaint, where AJB generally states that "Back scratchers, cane-shaped massagers and the like in various configurations have long been sold on the market. Such products are effective to apply finger point massage pressure using a variety of massage surface formations[.]"  Compl. ¶ 9.  This allegation makes no reference to the specific trade dress claimed by AJB, nor does it specifically claim that the alternative configurations perform the same function as the claimed trade dress.  *See Brandis Int'l,* 834 F.2d at 1148 ("the true test of

8

functionality is not whether the feature in question performs a function, but whether the feature 'is dictated by the functions to be performed,'… as evidenced by available alternative constructions" (quoting *Warner Bros. Inc. v. Gay Toys, Inc*., 724 F.2d 327, 331 (2d Cir.1983))).

Courts in this Circuit have long held that a product's "features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 30 (2001). AJB has not made any factual allegations that would overcome this presumption of functionality: the Complaint addresses neither the functionality of the specific features that make up the claimed trade dress, nor the effect of the claimed trade dress protection on "effective competition." *See Cartier,* 294 F.App'x. at 620; *Yurman Design,* 262 F.3d at 116 ("in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage" (internal quotations and marks omitted)). As AJB has failed to specifically plead that its claimed trade dress is non-functional, its trade dress claim must fail as a result. *See ID7D Co.,* 2012 WL 1247329 at *7 ("The failure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of and is therefore fatal to Plaintiff's trade dress claim").

### 3.   Secondary Meaning

Even if AJB had sufficiently described the claimed trade dress and alleged its non-functionality, its trade dress infringement claim would still fail for failure to allege specifically a secondary meaning. "To merit legal protection, a product's trade dress must be both sufficiently distinctive to distinguish its mark from those of others and nonfunctional." *Blumenthal Distrib., Inc. v. Exec. Chair, Inc*., No. CV-10-1280-CBA, 2010 WL 5980151, at *7 (E.D.N.Y. Nov. 9, 2010), *report and recommendation adopted*, No. 10-CV-1280 CBA SMG, 2011 WL 839546

(E.D.N.Y. Mar. 3, 2011) (citing *Le Sportsac, Inc. v. K Mart Co.*, 754 F.2d 71, 75 (2d Cir.1985)). This distinctiveness is established through an "additional showing that its design has acquired 'secondary meaning in the marketplace by which it is identified with its producer or source.'" *Id.* "To determine whether secondary meaning has attached, the court considers the following factors: '(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use.'" *Carson Optical,* 11 F.Supp.3d at 343 (citing *Cartier*, 294 Fed. App'x at 618).

AJB's Complaint specifies that Body Back has sold the contested cane massager in commerce for over 20 years.  Compl. ¶ 9.  The Complaint also alleges that Body Back has made use of the trade dress through "widespread sales" and that "the Trade Dress has come to indicate origin with Plaintiff Body Back."  *Id.* at ¶ 16.  AJB argues that these allegations, combined with the advertisement of the S-shaped configuration in connection with the product, plausibly plead the secondary meaning of the claimed trade dress.

An extensive and successful history of selling and advertising the product, without more, however, is not sufficient to demonstrate that the claimed trade dress has secondary meaning for purposes of a trade dress infringement claim.  In *Carson Optical, Inc. v. Prym Consumer USA, Inc.,* a manufacturer and marketer of optical products sought trade dress protection, based on the allegedly distinctive ornamental design of a magnifier by the trade name of SureGrip[TM]. 11 F.Supp.3d 317.  The plaintiff, Carson Optical, alleged in its complaint that it had successfully sold, marketed and promoted the trade dress for over a decade, including spending substantial sums of money on advertising for the design.  *Id.* at 344-345.  The district court nonetheless

10

determined that the plaintiff had failed to plead secondary meaning and dismissed the plaintiff's

trade dress infringement claims:

> In sum, absent from the pleadings are facts concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue which would support an inference that the trade dress of the SureGrip$^{TM}$ acquired secondary meaning. In addition, plaintiffs' general and cursory allegations that Carson has sold, marketed and promoted the SureGrip$^{TM}$ trade dress design since 1998, has spent substantial sums of money advertising the product design and that these designs have been a sales and marketing success, with no factual enhancement linking the claimed trade dress to Carson, fail to support an inference that SureGrip$^{TM}$ has acquired secondary meaning.

*Id.* (citing *Eyal R.D. Corp. v. Jewelex N.Y. Ltd*., 784 F. Supp. 2d 441, 445 (S.D.N.Y. 2011);

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc*., No. 12 Civ. 3599

(RWS), 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012)).

   "Substantial sales of a product, if (as here) unaccompanied by a concomitant effort on the

seller's part to associate the product's trade dress with the source of the product rather than the

product itself, do not establish that a product's trade dress has acquired secondary meaning."

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc*., No. 12 CIV. 3599, 2013

WL 866867, at *4 n.3 (S.D.N.Y. Mar. 8, 2013); *see also Bristol-Myers Squibb Co. v. McNeil-*

*P.P.C., Inc*., 973 F.2d 1033, 1042 (2d Cir. 1992) ("[Plaintiff] must show that the primary

significance of its 'Excedrin PM' trade dress is to identify the source of the product rather than

the product itself").  As the Complaint does not include any factual allegations that would

connect the claimed dress to Body Back as the source of the trade dress, rather than simply

connecting the trade dress to this particular genre of cane massager, AJB has failed to establish

this element of its trade dress infringement claim for motion to dismiss purposes.

4.   Likelihood of Confusion

The "central inquiry" in a trade dress infringement claim is whether the defendant's use of the claimed trade dress is likely to cause confusion as to the origin of the product. *Bristol-Myers Squibb Co.*, 973 F.2d at 1043.  In order to determine the likelihood of confusion, courts examine a non-exclusive list of factors, outlined by the Second Circuit in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 492 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961): "(1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of the defendant's products, and (8) the sophistication of the consumers." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2006) (citing *Polaroid Corp.,* 287 F.2d at 495).  "The *Polaroid* factors are not an exhaustive list of relevant considerations, and must not be applied mechanically.  Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Carson Optical*, 11 F.Supp.3d at 345 (internal quotations and marks omitted).

AJB has alleged that the Trigger Point Massager sold by BackJoy is essentially identical to the Trigger Point Massager sold by Body Back and AJB.  AJB included photographs of the two products with its Complaint, and apart from slight variations in the shape of the massage nubs and the presence of one additional massage nub on the Body Back product, the two products are indistinguishable.  Comparison Photograph, Compl. Ex. C, ECF No. 1-4.  The remaining *Polariod* factors were not specifically addressed in the Complaint: the Complaint is silent as to the quality of BackJoy's products and the sophistication of customers, and it generally states that BackJoy acted in bad faith, although the undisputed facts reflect that BackJoy initially made the allegedly infringing massagers with Body Back's permission.  AJB

now argues that it experienced at least one concrete example of actual confusion in which a customer mistook a BackJoy massager for a Body Back massager, Bernstein Dec. at ¶ 5; however, reference to this incident is absent from the Complaint.

In determining whether AJB has plausibly pled a likelihood of confusion as to its claimed trade dress, "no single factor is dispositive." *Louis Vuitton,* 454 F.3d at 118.  When conducting this analysis, "[u]tilizing a side-by-side comparison can be a useful 'heuristic means of investigating similarities and differences in ... respective designs,' so long as a court maintains a 'focus on the ultimate issue of the likelihood of consumer confusion.'" *Id.* at 117 (quoting *Malletier v. Burlington Coat Factory Warehouse Corp*., 426 F.3d 532, 538 (2d Cir. 2005)). Considering the product as a whole, in light of the overall similarity between the two Trigger Point Massagers, the Court finds that AJB has plausibly pled the likelihood of confusion for purposes of a trade dress infringement claim. However, AJB has failed to plead all other elements required to state a claim for trade dress infringement.  Accordingly, this claim is dismissed for failure to state a claim under Rule 12(b)(6).

### B.  Unfair Competition

In addition to a trade dress infringement claim under the Lanham Act, AJB also seeks to hold BackJoy liable for unfair competition under federal law.  Compl. ¶¶ 46-53 ("Count One: Federal Unfair Competition and Trade Dress Infringement").   "A Lanham Act unfair competition claim examines 'whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff.'" *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc*., 64 F. Supp. 3d 494, 513 (S.D.N.Y. 2014) (quoting *Warner Bros., Inc. v. Gay Toys, Inc*., 658 F.2d 76, 79 (2d Cir.1981)).  In order to state an unfair competition claim under the Lanham Act, the moving party must "demonstrate '(1) that it has a

valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.'" *Estate of Ellington ex rel. Ellington v. Harbrew Imports, Ltd.*, 812 F.Supp.2d 186, 192 (E.D.N.Y. 2011) (citing *Phillip Morris USA Inc. v. Marlboro Express,* No. 03-CV-1161, 2006 WL 2076921, at *4 (E.D.N.Y. Aug. 26, 2005)). As discussed above, AJB has failed to adequately plead a protectable trademark interest in the Trigger Point Massager through its trade dress; accordingly, AJB fails to state a viable federal unfair competition claim based on trade dress infringement.

In Count Two of its Complaint, AJB appears to bring an additional federal unfair competition claim based on BackJoy's use of the title "Trigger Point Massager" in combination with the claimed trade dress. Compl. ¶ 55. "Section 43(a) of the Lanham Act prohibits any person from using in commerce, in connection with any goods, 'any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person.' … The section protects unregistered trademarks from infringement." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc*., 228 F.3d 56, 61 (2d Cir. 2000) (quoting 15 U.S.C. § 1125(a)(1)). "[I]t is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).

The title "Trigger Point Massager" does not appear to qualify for protection under the Lanham Act as required for the first prong of a valid unfair competition claim under § 43(a). "In making the preliminary inquiry into whether a particular mark is eligible for protection under

section 43(a), we have established several categories into which we classify various marks….

'these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful."

*Bristol-Myers Squibb*, 973 F.2d at 1039 (citing *Abercrombie & Fitch Co. v. Hunting World*, 537

F.2d 4, 9 (2d Cir. 1976).  Considering the significant overlap between the mark at issue, "Trigger

Point Massager," and the relevant product, a cane massager designed to apply trigger point

massage therapy, the mark appears to fall in the "descriptive" category of trademarks.  A

"descriptive" trademark is eligible for protection only if it has acquired a secondary meaning.  *Id.*

As was the case with AJB's trade dress infringement claim, AJB has failed to allege any facts

suggesting the distinctiveness of the term "Trigger Point Massager" or any factual basis for a

conclusion that this term has acquired a secondary meaning.

AJB insists that the overwhelming similarity between the two products, taken as a whole,

is sufficient to state an unfair competition claim under the Lanham Act because of the resulting

likelihood of confusion.  Mem. in Opp. at  17-18.  However, this likelihood of confusion only

establishes the second prong of an unfair competition claim under the Lanham Act.  *See Estate of*

*Ellington ex rel. Ellington*, 812 F.Supp.2d at 192.  Without a valid trademark entitled to

protection under the Lanham Act, whether in the form of an unregistered trademark, valid trade

dress or other source of recognized protection, AJB fails to state a claim for unfair competition

based on the copying of its descriptive trademark and design features.  Accordingly, Count Two

of AJB's Complaint is also dismissed.

### C.  State Law Claims: Unfair Competition; Breach of Contract; Unjust Enrichment and Quasi-Contract

The remainder of AJB's Complaint focuses on state common law claims of unfair

competition, breach of contract, unjust enrichment and quasi-contract.  Count Three of the

Complaint alleges "common law unfair competition by confusion"; Count Four alleges unfair

competition based on the "disclosure of trade secrets"; Count Five alleges breach of contract; and Count Six alleges unjust enrichment and "quasi-contract." Compl. ¶¶ 56-65. The unfair competition claims described in Counts Three and Four do not specify which state's substantive law is deemed to apply to these claims, stating generally that the claims are brought "under the common law and statutory law of the several states." *Id.* at ¶¶ 58, 61.

BackJoy seeks dismissal of each of these claims for pleading deficiencies under Rule 12(b)(6). Specifically, BackJoy argues that (1) AJB fails to specify which state's substantive law is alleged to apply to the claims; (2) AJB fails to plead the elements of any of its state law claims under the substantive laws of Connecticut, Oregon, and Colorado, which it claims are the three states with the greatest connection to the parties in this dispute; (3) AJB fails to allege the existence of a binding contract that was allegedly breached by BackJoy; and (4) AJB's final claim for unjust enrichment offers only "labels and conclusions" and thus is not plausible on its face. Mem. in Supp. 9-18.

As described above, both of AJB's federal claims fail to state a claim under Fed. R. Civ. P. 12(b)(6) and are therefore dismissed. When federal claims are dismissed prior to trial, district courts are instructed to decline supplemental jurisdiction over any remaining state law claims. *See, e.g. Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006) (holding that district court's exercise of supplemental jurisdiction over state-law claims was not justified following dismissal of all federal claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Accordingly, the Court declines to exercise supplemental jurisdiction over AJB's state law claims at this time. Counts Three through Six of the Complaint are dismissed.

### D.  Leave to Replead

AJB argues that the Court should grant it leave to amend its Complaint to address the identified pleading deficiencies.  Under Rule 15, courts are instructed to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded").  AJB has not amended its complaint and, in light of the lack of factual specificity in the current Complaint with respect to the essential elements of each of AJB's claims, the Court cannot conclude at this early stage that amendment would be futile.  *See Williams v. Citigroup,* 659 F.3d 208, 2014 (2d Cir. 2011) ("Leave to amend need not be granted… where the proposed amendment would be futile").  AJB is granted leave to amend its complaint and re-plead to address the concerns raised in BackJoy's motion to dismiss.

### E.  CONCLUSION

BackJoy's Motion to Dismiss is **GRANTED**.  AJB is granted leave to amend its complaint to include additional factual allegations regarding its trade dress infringement claim, its state and federal unfair competition claims, and its remaining state law claims.  Should AJB choose to file an Amended Complaint in this matter, it is also instructed to include specific allegations regarding the applicable state substantive law in connection with its state common law claims.

The Clerk of the Court is directed to close this case if an Amended Complaint is not filed within 30 days of this ruling.

SO ORDERED this 16th day of December at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE